Jeremy S. **LEWIS**, Appellant,

v.

**COMMONWEALTH of Kentucky,**
**Appellee.**

No. 2005–CA–002408–DG.

Court of Appeals of Kentucky.

Jan. 5, 2007.

Discretionary Review Denied by Supreme Court April 11, 2007.

**876**

Stephen P. Huddleston, Warsaw, KY, for appellant.

James C. Monk, Carrollton, KY, for appellee.

Before ACREE, DIXON, and VANMETER, Judges.

*OPINION*

VANMETER, Judge.

In order for the results of a breath alcohol concentration (BAC) test to be admissible at trial, a proper foundation must be laid. The issue we must address in this case is whether certain testimony, that the Intoxilizer® 5000 (Intoxilizer) went through a "calibration check," met the requirement of showing that an "alcohol simulator analysis" was conducted. 500 KAR[1] 8:030 § 1(2). As we hold that it did, we affirm the judgment of the Carroll Circuit Court, which upheld the DUI conviction of Jeremy Lewis.

Jeremy Lewis was arrested for driving under the influence in violation of KRS[2] 189A.010. At Lewis' August 2005 trial, the Commonwealth prosecuted him as having been intoxicated "per se" because he had an "alcohol concentration of 0.08 or more

as measured by a scientifically reliable test or tests of a sample of the person's breath[.]" KRS 189A.010(1)(a).

Officer Jeff Gordon of the Carrollton Police Department, who performed the BAC test on Lewis following his arrest, testified on direct examination at trial as to his certification to operate the Intoxilizer and as to the steps he took before conducting the test, including advising Lewis of his right to contact an attorney and reading to him the statements on an implied consent card. Gordon testified both as to the basic operation of the BAC test machine in general, and as to the machine's operation on the date of Lewis' test. More specifically, he testified regarding the initial air blank test, the calibration test which registered .082, the second air blank test, and finally Lewis' actual test on which he registered .118. Following this testimony, the court granted the Commonwealth's motion to admit into evidence the test results printout. In pertinent part, the printout reflects the following:

| TEST | GRAMS/210L | TIME |
|---|---|---|
| AIR BLANK | .000 | 19.59EST |
| CAL. CHECK | .082 | 19.59EST |
| AIR BLANK | .000 | 20.00EST |
| SUBJECT TEST | .118 | 20.00EST |
| AIR BLANK | .000 | 20.00EST |

In response to the question on cross-examination of whether any aspect of the BAC test reflected an alcohol simulator analysis, Gordon stated that such information had not been discussed or provided in his training.

After the Commonwealth rested its case, Lewis moved to strike the results of the BAC test, arguing that a proper foundation for the test had not been laid under *Commonwealth v. Roberts,* 122 S.W.3d 524 (Ky.2003), because no aspect of the test reflected an "alcohol simulator analysis."

---

1. Kentucky Administrative Regulations.

2. Kentucky Revised Statutes.

The trial court overruled this motion stating that the calibration check, as testified to and shown on the printout, constituted an "alcohol simulator analysis." At the conclusion of the trial, Lewis was found guilty and received a $200 fine. This appeal follows.

On appeal, Lewis advances the sole argument that the trial court erred in admitting the result of the BAC test in the absence of a proper foundation, *i.e.,* absent proof of an alcohol simulator analysis as required by *Roberts* and 500 KAR 8:030 § 1(2). In *Roberts,* the Kentucky Supreme Court set out "the evidence necessary to lay the proper foundation for admission of a breath test" as follows:

1) That the machine was properly checked and in proper working order at the time of conducting the test.

2) That the test consist of the steps and the sequence set forth in 500 KAR 8:030(2)[sic].

3) That the certified operator have continuous control of the person by present sense impression for at least twenty minutes prior to the test and that during the twenty minute period the subject did not have oral or nasal intake of substances which will affect the test.

4) That the test be given by an operator who is properly trained and certified to operate the machine.

5) That the test was performed in accordance with standard operating procedures.

122 S.W.3d at 528. Further, 500 KAR 8:030 § 1(2) sets forth five sequential steps for BAC tests: "(a) Ambient air analysis; (b) Alcohol simulator analysis; (c) Ambient air analysis; (d) Subject breath sample analysis; and (e) Ambient air analysis."

The Intoxilizer operates by conducting five sequential tests. The three alternating air blank tests or ambient air analyses are designed to insure that no lingering alcohol remains in the testing chamber. During the second test, the calibration check, a solution having a known alcohol concentration of .08 is introduced into the machine's testing chamber to check its calibration. The fourth or "subject" test is, of course, the test of the accused's breath. Clearly, the calibration check portion of Lewis' test, that was designated "CAL. CHECK" on the test printout and which registered .082, was the "alcohol simulator analysis" required by regulation.

Notwithstanding the standard operating procedure of the Intoxilizer, Lewis argues that something more or different is required since the *Roberts* court, after finding that there had been inadequate foundational testimony that the testing machine was in proper working order, stated in dicta:

We must observe an additional problem in this case in that there was no testimony concerning the steps and the sequence set forth in 500 KAR 8:030(2)[sic]. Nor is the document contained in the record compliant with that regulation. That document was apparently attached to the uniform citation, but it only shows a **calibration check** and the subject test. It does not make reference to the two ambient air analysis tests or the **alcohol simulator analysis.** The deficiency is all the more apparent when compared to the test ticket in *Smith,* which does reflect the proper information.

122 S.W.3d at 529 (emphasis added). Based on this passage, Lewis argues that a calibration check and an alcohol simulator analysis are two different tests. Unfortunately, we do not have the benefit of the *Roberts* record or the test tickets referred to therein, other than this brief recitation and the court's indication that only one of the two test tickets under its consideration

was proper. In the context of the instant case, however, all five tests complying with the sequential requirements of 500 KAR 8:030 § 1(2) are reflected on the test ticket printout. We conclude that a proper foundation for the admission of the BAC test results was laid.

The judgment of the Carroll Circuit Court is affirmed.

ALL CONCUR.

